UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD SAUERHAFT as father and
guardian ad litem of S.S., DOREEN
SAUERHAFT as mother of S.S., and S.S.,

               Plaintiffs,

     -against-                    **MEMORANDUM OPINION
                                                            AND ORDER**

THE BOARD OF EDUCATION OF THE
HASTINGS-ON-HUDSON UNION FREE
SCHOOL DISTRICT, JOHN J. RUSSELL,    05 Civ. 09087 (PGG)
individually and as Superintendent,
THOMAS J. FAZIO, individually and as
Principal, MIKE ROSSI, individually and
as Assistant Principal, and SUSAN
GUINEY, individually and as Technology
Director,

               Defendants.

PAUL G. GARDEPHE, U.S.D.J.:

        This action arises from three offensive e-mails that Plaintiff S.S. received through her school e-mail account during her freshman year at the Hastings-on-Hudson high school. Plaintiffs assert that these e-mails constitute sexual harassment for which Defendant Board of Education of the Hastings-on-Hudson Union Free School District is liable under 20 U.S.C. § 1681 et seq. ("Title IX"), and for which the individual defendants are liable under the Fourteenth Amendment and 42 U.S.C. § 1983. (Cmplt. ¶¶ 60-94) Defendants have moved for summary judgment on all of Plaintiffs' claims, and Plaintiffs have moved to strike certain affidavits and exhibits Defendants filed in support of their motion and certain paragraphs in Defendants' Rule 56.1 Statement. For the

reasons stated below, Plaintiffs' motion (Docket No. 30) is DENIED, and Defendants' motion (Docket No. 19) is GRANTED.

## DISCUSSION

Summary judgment is warranted when the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor," Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008), and the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

### I.   FACTS

#### A.   The Parties

Plaintiff S.S. was a ninth grade student at Hastings-on-Hudson High School (the "High School") during the 2004-05 school year. (Def. Rule 56.1 Stat. ¶ 5)[1] Plaintiffs Richard and Doreen Sauerhaft are S.S.'s parents and legal guardians. (Id. ¶ 6) During the 2004-2005 school year, Defendant Russell was Superintendent of the Hastings-on-Hudson Union Free School District (the "District"), and Defendants Fazio,

---

[1] To the extent that this Court relies on facts drawn from Defendants' Rule 56.1 Statement, it has done so because Plaintiffs have not controverted those facts with citations to admissible evidence. Where Plaintiffs disagree with Defendants' characterization of the cited evidence, and have presented an evidentiary basis for doing so, the Court relies on Plaintiffs' characterization of the evidence. See Cifra, 252 F.3d at 216 (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion). In deciding this motion, the Court has also disregarded certain evidence in accordance with its ruling on Plaintiffs' motion to strike, which is set forth below. (See infra pp. 16-19)

Rossi, and Guiney were, respectively, the principal, assistant principal, and technology director of the High School.  (Id. ¶¶ 1-4)

### B. The Offensive E-mails

The District provides each High School student with an e-mail account through a network maintained by employees of a New York state agency, the Board of Cooperative Educational Services ("BOCES").  (Guiney Aff. ¶¶ 6-8)

On the morning of March 18, 2005, S.S. checked her District e-mail account from a school computer and found the following message:  "FATTY FATTYFATTYFATTYFATTY fatty mcfatfat wow you are one fat fuck and everyone hates you."  (Def. Rule 56.1 Stat. ¶¶ 7-9; Pltf. Statement of Additional Facts ¶ 6; Russell Ex. B)  The e-mail was dated March 17, 2005, and originated from the District e-mail account of High School student M.X.  (Def. Rule 56.1 Stat. ¶¶ 8-9)

Soon after receiving this e-mail, S.S. responded as follows:  "you really need to get a life and stop spending your time trying to bring down others so you wont feel like the loser you are.  im not the one who tries to act cool around everyone he can find hoping to gain a friend or two.  im fine with my life.  And its really sad that youthink calling me fat will diss me."  (Def. Rule 56.1 Stat. ¶ 10; Russell Ex. B)

On March 18, another e-mail was sent from M.X.'s account to S.S.  This e-mail read:  "show me your tits."  (Russell Ex. B; Def. Rule 56.1 Stat. ¶ 8)  S.S. received this e-mail when she checked her District e-mail account at some time between March 18 and March 24, 2005.  (Pltf. Statement of Additional Facts ¶ 6)  S.S. did not respond to this e-mail.

On March 28, 2005, S.S. checked her District e-mail account and found a third e-mail from M.X.'s account, dated March 25, which read:  "you you fat fuck i want

3

to have sex with you in the middle of hte night.  i will grab your tits and suck thm.  all while feeling you up in the vagina."  (Def. Rule 56.1 Stat. ¶ 8; Pltf. Statement of Additional Facts ¶ 6; Russell Ex. B)

The third e-mail was the last offensive e-mail S.S. received from M.X.'s account.[2]  (Def. Rule 56.1 Stat. ¶ 21; Pltf. Statement of Additional Facts ¶ 6)

### C. The District's Initial Response to the E-mails

On March 18, after receiving the first e-mail, S.S. printed it out and gave it to her guidance counselor, Sharon Quigley.  (Def. Rule 56.1 Stat. ¶ 11)  Quigley gave the e-mail to her supervisor.  (Quigley Dep. 21:3-13)  "On or about" March 18, the e-mail was independently brought to the attention of Technology Director Guiney by Diane Watson, the BOCES administrator assigned to assist with the High School's network, along with another offensive e-mail sent on March 17 from M.X.'s account to a different student.[3]  (Guiney Aff. ¶¶ 12-13; Rossi Ex. L)  Guiney met with Assistant Principal Rossi on March 18 to discuss these e-mails, and Watson was instructed to investigate the origin of the e-mail sent to S.S.  (Id. ¶¶ 14-15)

---

[2]  Although Plaintiffs claim that there "is a great deal of factual dispute about the timing of these emails" (Pltf. Statement of Additional Facts ¶ 6), this assertion is baseless.  The documentary evidence and S.S.'s testimony are consistent with the dates stated above, and there is no evidence to the contrary.  (See S.S. Dep. 33, 49, 52-53, 65; Russell Ex. B)  Plaintiffs' argument on this point appears to be based on Defendant Rossi's deposition testimony, in which he states that he cannot recall the timing of the e-mails.  (Pltf. Statement of Additional Facts ¶ 6)  Rossi's testimony does not put the timing of the e-mails in dispute, however, because it does not provide a basis for a jury to find that the e-mails were not sent or received on the dates to which S.S. testified.  See Beyer, 524 F.3d at 163.

[3]  This e-mail read: "i really want to sex you up and stroke your smoth silky body with my tongue as i slowly undress you.  oh baby.  you are so hot yet so very very flat."  (Rossi Ex. L)

4

On or about March 22, 2005, Rossi spoke with both S.S. and her mother about the first and second offensive e-mails sent to S.S. (Rossi Aff. ¶ 13; Rossi Ex. N at 1) Rossi called S.S.'s mother, Doreen Sauerhaft, and told her that S.S. had received an obscene e-mail and that he was going to investigate it. (D. Sauerhaft Dep. 13:5-14:21) Before the end of March, S.S.'s mother called Rossi to ask for an update, and Rossi said that he "was getting his technology person involved." (Id. 14:22-15:23) S.S.'s mother responded that "it was about the right time to do so" because S.S. had received another obscene e-mail by that point. (Id. 15:18-23)

At the end of March 2005, after S.S. had received the third e-mail,[4] Rossi interviewed M.X. about whether he had sent any inappropriate e-mails "into the school." (Rossi Dep. 42:6-14) Rossi did not show M.X. the e-mails sent to S.S. (id. at 41:13-42:21), but either Rossi or M.X. mentioned her name. M.X. stated that he and S.S. had been friendly but had "had some sort of falling out." (Id. at 44:8-11) M.X. denied sending any inappropriate e-mails but admitted that he had given the password for his District e-mail account to two or three other students. (Id. at 43:2-9, 45:4-6) Rossi later asked those students whether they had any other student's password, without mentioning M.X.'s name; those students denied ever having obtained another student's password. (Id. at 43:12-24)

---

[4] The precise timing of Rossi's conversation with M.X. is not clear. Rossi's affidavit refers only to speaking to M.X. about the "Three Emails," suggesting that he did not speak to M.X. until after S.S. had received the third e-mail on March 28. (Rossi Aff. ¶ 9) Because all rational inferences must be drawn in Plaintiffs' favor, the Court will assume that Rossi did not question M.X. until March 28 or later.

5

Principal Fazio also interviewed M.X. in late March. M.X. once again denied sending the offensive e-mails and claimed that someone had gained access to his District e-mail account. (Fazio Aff. ¶ 9)

### D. The District's Subsequent Actions

In the months after March 28, Rossi discussed the three offensive e-mails with M.X.'s mother, with the guidance counselors assigned to both students, and with police officers assigned to the High School campus. (Rossi Aff. ¶¶ 13-14) Rossi also observed S.S. "[o]n many school days" while she was performing community service in the guidance office and believed that she was functioning normally. (Id. ¶ 17) S.S. did not indicate to Rossi that she felt unsafe or that she feared coming to school. (Id.)

Between April and May 2005, Rossi also spoke with the Sauerhafts on approximately 15 to 25 occasions. (Rossi Dep. 184:5-10) Doreen Sauerhaft called Rossi about once a week to ask about the progress of his investigation; during these calls, she told Rossi that S.S. was "getting more and more upset." Rossi assured her that he would "get [] to the bottom of this." (D. Sauerhaft Dep. 17:21-18:15)

The District was not able to determine definitively who sent the offensive e-mails to S.S., however, in part because one of the network system logs that might have shown the Internet service provider through which the District network had been accessed only kept a record of the information for a seven-day period. By the time the District requested this information, it was no longer available. (Id.) Indeed, the District did not even begin to attempt to trace the offensive e-mails until mid-May or June 2005. (See Rossi Aff. Ex. P (May 16, 2005 e-mail from Guiney to Rossi stating that Guiney had just told Richard Sauerhaft that she "would be searching our system for an electronic

6

record of the email"); Guiney Ex. AA (report from BOCES stating that District had requested that the e-mails be traced in June))

During a May 31, 2005 telephone conversation, Doreen Sauerhaft told Rossi that she believed that S.S. was not safe at the high school. (Rossi Ex. N at A105) On June 13, 2005, after classes for the year had ended but before the start of final exams, Doreen Sauerhaft sent an e-mail to Principal Fazio expressing concern for S.S.'s safety. (Fazio Aff. ¶ 18; Fazio Ex. J) After receiving the e-mail, Fazio told S.S.'s mother that he and Rossi would monitor S.S. and M.X. whenever they were likely to be together, such as at lunchtime, and that S.S. and M.X. would not be placed in any classes together during the next school year. (Fazio Aff. ¶¶ 18-19)

Although Defendants contend that the District changed M.X.'s password "shortly" after S.S. received the third e-mail on March 28, 2005, they have not offered evidence showing what date it was changed. (Def. Rule 56.1 Stat. ¶ 20; Fazio Aff. ¶ 10; Guiney Aff. ¶ 18) BOCES administrator Watson, who changed the password at Rossi's and Guiney's request, testified that she took this action sometime after May 16, 2005. (Watson Dep. 60:3-20, 124:7-125:13, 135:16-135:20) At an unknown later date, the District disabled M.X.'s access to the District's network. (Rossi Aff. ¶ 12; Russell Aff. ¶ 18; Russell Ex. G) Because the District could not prove that M.X. sent the offensive e-mails, it did not disable his access as a punishment for sending them. (Rossi Aff. ¶ 23) Instead, the District took this action because M.X. had shared his password with others.[5] (Rossi Aff. ¶ 23; Fazio Dep. 135:18-137:4)

---

[5] The record is not clear as to whether M.X. was required to perform three hours of community service as discipline for this incident. (R. Sauerhaft Dep. 71:13-18 (stating

### E.     S.S.'s School Performance After March 28, 2005

After S.S. received the e-mails, she maintained an excellent academic record, making the high honor roll during the third and fourth quarters of her freshman year. (S.S. Dep. 16:18-17:14) She missed at least three days of school, but otherwise had normal attendance and continued to play on the school softball team. (See S.S. Dep. 41:16-22, 55:4-9, 113:12-16 (stating that she missed the last three days of school), 132:2-5; Rossi Aff. ¶ 18 (stating that S.S.'s attendance was satisfactory based on school records))

S.S. testified, however, that she felt "freaked out about going to school" and socialized less with High School students. (S.S. Dep. 98:18-20, 127:11-17) She also saw a therapist twice. (Id. at 146:11-17)

## II.     PLAINTIFFS' TITLE IX CLAIM

Plaintiffs' Title IX claim is based on the theory that the three e-mails sent to S.S. constitute student-on-student sexual harassment. (Pltf. Br. at 3, 6) To prevail on a Title IX student-on-student harassment claim against a school board, a plaintiff must show: (1) that the school board was a recipient of federal funds;[6] (2) that it "act[ed] with deliberate indifference to known acts of harassment in its programs or activities;"[7] and

---

that he understood that M.X. was required to perform community service); Rossi Aff. ¶ 23 & Ex. T (stating that M.X. was required to perform community service); Fazio Dep. 135:18-137:4 (stating that M.X. was not required to perform community service and that the only discipline imposed on M.X. was loss of his network privileges))

[6] It is undisputed that the Board of Education of the District meets this requirement. (Pltf. Statement of Additional Facts ¶ 20)

[7] Defendants do not dispute that the District learned of each e-mail on the day S.S. received it, and that the alleged harassment, which occurred through the District's e-mail system, took place as part of the District's "programs or activities." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633, 119 S.Ct. 1661, 1666 (1999). (Def. Br. at 8-18

(3) that the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633, 119 S.Ct. 1661, 1666 (1999).  While this Court cannot rule as a matter of law as to whether the District acted with "deliberate indifference," the District is nonetheless entitled to summary judgment on Plaintiffs' Title IX claim, because Plaintiffs have not offered sufficient evidence for a jury to find in their favor on the "severe and pervasive" issue.

To prevail on their Title IX claim, Plaintiffs must show that the alleged harassment experienced by S.S. was "so severe, pervasive, and objectively offensive, and . . . so undermine[d] and detract[ed] from . . . [S.S.'s] educational experience, that . . . [S.S. was] effectively denied equal access to . . . [the High School's] resources and opportunities." Davis, 526 U.S. at 651, 119 S.Ct. at 1675.  Acknowledging "the inevitability of student misconduct" and the "practical realities of responding to student behavior," the Supreme Court has explained that this standard will not be met by "simple acts of teasing and name-calling," nor will it be met by a "single instance of one-on-one harassment" unless the instance is "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." Id., 526 U.S. at 652-53, 119 S.Ct. at 1675-76.  Thus, in determining whether the alleged harassment meets the "severe, pervasive, and objectively offensive" requirement, the Court "view[s] . . . [the situation] as a whole, keeping in mind that students often engage in insults, banter, teasing, . . . and gender-specific conduct that can be upsetting to the student receiving it,

---

(arguing only that its response was not unreasonable and that S.S. was not subjected to "severe and pervasive" harassment))

but [such conduct] . . . does not amount to an actionable Title IX claim." Riccio v. New Haven Bd. of Educ., 467 F. Supp. 2d 219, 227 (D. Conn. 2006).

While the three e-mails sent to S.S. were objectively offensive, they do not constitute harassment so severe and pervasive that a jury could find that the standard for establishing Title IX liability is met here. The three e-mails were sent over a week's time and were read by S.S. over a period of 10 days. (See supra pp. 3-4; Pltf. Br. at 1-3) It is undisputed that there was no physical or public component to the harassment. Therefore, the issue is whether the two[8] crude, sex-related e-mails sent to S.S. over a 10-day period could reasonably be considered sexual harassment so severe and pervasive as to deprive her of an educational opportunity at the High School.

Plaintiffs cite only one student-on-student harassment case in support of their argument that the e-mails at issue here meet the "severe and pervasive" standard. However, that case, Davis, 526 U.S. 629, is clearly distinguishable. In Davis, the alleged harassment occurred regularly over a period of five months and "included numerous acts of objectively offensive touching" for which the harasser ultimately pleaded guilty to criminal sexual misconduct. Id., 526 U.S. at 633-34, 119 S.Ct. at 1667. Thus, the harassment was both substantially more severe and substantially more pervasive than in this case. See also, e.g., Riccio, 467 F. Supp. 2d at 227 (denying summary judgment on issue of severity and pervasiveness where student was subjected to harassment "nearly

---

[8] The first of the e-mails was not understood by S.S. to be sexually explicit (S.S. Dep. 44:4-10) and did not otherwise relate to her gender.

every school day" throughout an entire school year by more than a dozen students in public settings such as classrooms and hallways).[9]

In contrast, where, as here, the alleged harassment was less severe or less frequent, courts have granted summary judgment to the defendants. For instance, in Brodsky v. Trumbull Bd. of Educ., No. 06-Civ.-1947, 2009 WL 230708 (D. Conn. Jan. 30, 2009), the conduct at issue included the alleged female harasser calling the female plaintiff "whore," "prude," and "bitch" on various occasions over several months and touching the plaintiff's breasts or buttocks in the school hallway on one occasion. Id. at **1, 6. The court found that this conduct was "not so severe, pervasive, and objectively offensive that . . . [it] could reasonably be said to deprive . . . [the plaintiff] of access to the educational opportunities or benefits provided by the school." Id. at *6.

---

[9] The second case that Plaintiffs cite, Hayut v. State University of New York, 352 F.3d 733 (2d Cir. 2003), is distinguishable on several grounds. First, the alleged harasser there was the student's professor. Id. at 737. As the Supreme Court noted in Davis, "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits," and "[p]eer harassment . . . is less likely to satisfy these requirements than is teacher-student harassment." Id., 526 U.S. at 653, 119 S.Ct. at 1676. Moreover, the harassment in Hayut was substantially more pervasive than in this case, and was also more severe in that it involved public humiliation of the victim. In Hayut, the professor harasser referred to a student in two of his classes as "Monica" – understood by the harasser, the plaintiff, and her fellow students as a reference to Monica Lewinsky – at least once per class for most of the school semester. He also addressed her as "Monica" when they passed each other outside of class. Id., 352 F.3d at 738. On at least four occasions, the professor also made other offensive comments, such as "How was your weekend with Bill?," "I will give you a cigar later," and "You are wearing the same color lipstick that Monica wears." Id. at 738-39. The Second Circuit held that a jury could find this conduct to be severe and pervasive enough to meet the standard for liability under 42 U.S.C. § 1983, in part because the frequent comments "were generally made at or near the beginning of [each class] . . . thereby setting the tone for the remainder of the class period." Id. at 746.

Similarly, in Soriano v. Bd. of Educ. of City of New York, No. 01-Civ.-4961(JG), 2004 WL 2397610 (E.D.N.Y. Oct. 27, 2004), the court granted summary judgment to the defendants where the fourth grade plaintiff was allegedly subjected to two incidents of offensive touching – in one instance a fourth grade boy touched her vagina through her skirt after two other boys told him to "rape her," and approximately six months later, another fourth grade boy slapped her buttocks.  Id. at *6.  The court held that despite allegations that the plaintiff suffered nightmares and declining grades and had to see a therapist, the alleged events could not support a finding that she was subjected to harassment so severe and pervasive that she was denied access to the school's resources.  Id. (granting summary judgment to defendants on plaintiff's Title IX claim).

While the e-mails sent to S.S. are highly offensive, no reasonable jury could find that these two instances of sexual harassment – which stopped after a week and were not public – "so undermine[d] and detract[ed] from . . . [S.S.'s] educational experience, that . . . [S.S. was] effectively denied equal access to . . . [the High School's] resources and opportunities."  Davis, 526 U.S. at 651, 119 S.Ct. at 1675.  Therefore, the District is entitled to summary judgment on Plaintiffs' Title IX claim.[10]

---

[10] As noted above, this Court cannot rule as a matter of law on the issue of whether the District was deliberately indifferent to the known acts of harassment here.  To prevail in showing deliberate indifference, a plaintiff must show that the defendant "caus[ed] . . . [the victim] to undergo harassment or ma[de] . . . [her] liable or vulnerable to it."  Davis, 526 U.S. at 645, 119 S.Ct. at 1672 (internal quotations omitted).  A defendant's response to alleged harassment may be "deemed 'deliberately indifferent'" only if it was "clearly unreasonable in light of the known circumstances."  Id., 526 U.S. at 648, 119 S.Ct. at 1674 (further stating that this standard "is not a mere 'reasonableness' standard").  Deliberate indifference may be found "when remedial action only follows after a lengthy and unjustified delay."  Hayut, 352 F.3d at 751 (internal quotation omitted).

"When an educational institution takes timely and reasonable measures to end the harassment, it is not deliberately indifferent. . . .  The measures need not have been

## III.     PLAINTIFFS' SECTION 1983 CLAIMS

Plaintiffs also assert claims against the individual defendants under 42 U.S.C. § 1983, arguing that they are entitled to proceed under both an equal protection theory and a substantive due process theory. (Pltf. Br. at 21-26)  To prevail under

---

ultimately effective in preventing subsequent misconduct, so long as they were taken in good faith." Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 398 (E.D.N.Y. 2005) (internal citations omitted).  However, "where an educational institution either fails to act, or acts in a way which could not have reasonably been expected to remedy the violation, then the institution is liable for what amounts to an official decision not to end discrimination." Id. at 399 (internal quotation omitted).

Courts have found that a school does not act with deliberate indifference toward harassment where it "promptly investigates, institutes corrective measures, and subsequently continues to monitor the situation." Id.  Here, the Court cannot find as a matter of law that the District took any such steps.  There are genuine factual disputes as to how promptly the District took obvious and basic steps such as questioning M.X.; interviewing the students identified by M.X. as having access to his account; changing M.X.'s password; and disabling M.X.'s District e-mail account.  Moreover, there is no evidence that the District directly asked M.X. whether he sent the offensive e-mails to S.S.; that it took any steps to gather and preserve information about use of its network that might have assisted in determining who sent the e-mails; or that it monitored the use of M.X.'s account after the first inappropriate e-mails were sent from the account.

There is also evidence that the District chose to respond much more quickly and thoroughly to other incidents of harassment.  For instance, Rossi testified that when the word "nigger" was found spray painted on a locker, it was photographed and then removed within an hour, and the police were called within a day. (Rossi Dep. 163:7-164:9)  The school brought in a former student who was African-American to speak to the student body, and also brought in a facilitator from the U.S. Department of Justice to meet with students. (Russell Dep. 191:6-192:17)  Similarly, when a pornographic picture was e-mailed to the school librarian five or six years earlier, the District traced the e-mail within a week, and identified and suspended the student responsible. (Fazio Dep. 21:6-22:8, 23:11-26:3)  Here, the District did not seek to obtain or preserve network system logs that could have facilitated tracing the offensive e-mails until months after the e-mails were sent.  By that time, the logs had been destroyed.

In sum, given the delays in the District's actions, the failure to preserve evidence, and the overall handling of the investigation, it is a jury question whether the District was "deliberately indifferent" to the acts of sexual harassment that took place.  This is particularly true given the District's knowledge of other highly offensive, sexually oriented e-mail sent to another female student from M.X.'s account during the same time period.

13

Section 1983, Plaintiffs must show that the individual defendants directly participated in conduct that deprived S.S. of a "right . . . secured by the Constitution or laws of the United States." Hayut v. State Univ. of New York, 352 F.3d 733, 744, 753 (2d Cir. 2003). Because Plaintiffs cannot establish that S.S. suffered a constitutional injury, they cannot prevail on their Section 1983 claims.

### A.     S.S.'s Equal Protection Claim

The Second Circuit has recognized "a constitutional right" under the Equal Protection Clause "to an educational environment free of sexual harassment." Bruneau v. S. Kortright Cent. Sch. Dist., 163 F.3d 749, 758 (2d Cir. 1998) (considering peer harassment claim); see also Fitzgerald v. Barnstable Sch. Comm., 129 S.Ct. 788, 792 (2009) (holding that Title IX does not preclude a Section 1983 equal protection claim in a peer sexual harassment case). As under Title IX, to show that S.S. was deprived of this right, Plaintiffs must show that S.S. was subjected to actionable sexual harassment – i.e., harassment so severe and pervasive that it "had an adverse effect on the terms and conditions of her educational experience." Hayut, 352 F.3d at 745-46 (describing elements of Section 1983 equal protection claim in teacher-on-student harassment case).

As noted above, however, the alleged harassment was not severe or pervasive enough to support liability under Title IX. For the same reasons (see supra pp. 8-12), the alleged conduct is not severe or pervasive enough to constitute actionable sexual harassment for purposes of Section 1983.[11]  Therefore, Plaintiffs cannot show that

---

[11] Although "the standards for establishing liability [under Title IX and Section 1983] may not be wholly congruent," see Fitzgerald, 129 S.Ct. at 797, the Second Circuit has made clear that a Section 1983 plaintiff pursuing a sexual harassment claim in the "educational environment" must – as under Title IX – demonstrate that he or she was subjected to "discriminatory intimidation, ridicule and insult . . . that is sufficiently severe

S.S. was deprived of her right "to an educational environment free of sexual harassment," Bruneau, 163 F.3d at 758, and their Section 1983 equal protection claim fails as a matter of law.  See Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) ("In order to establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right."); Van Dunk v. Brower, No. 07-Civ.-7087(RPP), 2009 WL 650352, at *8 (S.D.N.Y. Mar. 12, 2009) (in a Section 1983 case, "if there is no constitutional violation, there can be no liability, either on the part of the individual officer or the government body").

### B.   S.S.'s Substantive Due Process Claim

Plaintiffs also cannot prevail under a substantive due process theory.  To do so, they must show that the individual defendants' conduct was "egregious" and "can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002) (internal quotation omitted); Yap v. Oceanside Union Free Sch. Dist., 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004) (same).  Plaintiffs assert, without citation to case law, that Defendants' failure to prevent the offensive e-mails or to identify the sender meets this standard. (Pltf. Br. at 24)

---

or pervasive to [have] alter[ed] the conditions of . . . [the plaintiff's] educational environment."  Hayut, 352 F.3d at 745 (quotations and citation omitted) (applying "severe and pervasive" test to Section 1983 claim premised on teacher-on-student harassment); see also Cox v. Sugg, 484 F.3d 1062, 1067 (8th Cir. 2007) (citing Hayut in support of holding that "the individual defendant's liability under § 1983 for alleged constitutional violations [should be measured] by the standards of the institution's Title IX liability"); Levarge v. Preston Bd. of Educ., 552 F. Supp. 2d 248, 254 (D. Conn. 2008) (applying same standards in analyzing severity and pervasiveness of alleged harassment for purposes of Title IX and Section 1983 claims).

15

Whether or not a jury could find, however, that Defendants failed to take steps that (1) might have prevented one or two of the offensive e-mails from being sent to S.S., or (2) might have identified the sender, such a failure "simply is not of constitutional proportions." Smith, 298 F.3d at 173 (allegations that teacher slapped a student once without any valid reason could not support a substantive due process claim); see Saggio v. Sprady, 475 F. Supp. 2d 203, 209 (E.D.N.Y. 2007) (holding that "the argument that a school district can violate substantive due process by not protecting students from harassment has been generally rejected or, at least, the atmosphere that must exist for such a violation is much more extreme than" the three verbally or physically abusive encounters with other students alleged by plaintiff); Scruggs v. Meriden Bd. of Educ., No. 03-Civ.-2224, 2007 WL 2318851, at **12-13 (D. Conn. Aug. 10, 2007) (school officials' alleged failure to remedy bullying and harassment of plaintiff by other students was insufficient to support substantive due process claim where there was no evidence that the officials encouraged or affirmatively permitted the harassment). Accordingly, Defendants are also entitled to summary judgment on Plaintiffs' Section 1983 substantive due process claim.

## IV.     PLAINTIFFS' MOTION TO STRIKE

Plaintiffs have moved to strike certain paragraphs of Defendants' Rule 56.1 Statement and the affidavits submitted by Defendants in support of their summary judgment motion. For the reasons stated below, Plaintiffs' motion is denied, although the Court has not considered certain evidence offered by Defendants in deciding their summary judgment motion.

### A. Paragraphs in Defendants' Rule 56.1 Statement that Do Not Cite Admissible Evidence

Plaintiffs moved to strike paragraphs 6, 15, 18, 33, 36, 37 and 38 of Defendants' Rule 56.1 Statement because those paragraphs do not cite to admissible evidence, in violation of Local Rule 56.1(d). (Pltf. Mot. to Strike ¶¶ 1-7) In their opposition to Plaintiffs' motion, Defendants provide citations purporting to support the statements contained in all of the paragraphs listed above except for paragraph 33. (Def. Mot. to Strike Opp. Br. at 2-3) Because Plaintiffs have not identified any prejudice they suffered based on Defendants' original failure to provide proper citations to the record, the Court will not strike the six paragraphs for which Defendants have now provided cites to admissible evidence. See Frooks v. Town of Cortlandt, 997 F. Supp. 438, 445 n.1 (S.D.N.Y. 1998) ("Rule 56.1 does not prohibit the consideration of untimely statements, particularly where the admission of the statement will not prejudice an opposing party."); Balut v. Loral Elec. Sys., 988 F. Supp. 339, 343-44 (S.D.N.Y. 1997) (a court "may overlook the 'technical deficiency' of a party's [Rule 56.1] submission"). Because Defendants have not cited to admissible evidence supporting paragraph 33, however, the Court has not considered this statement in deciding Defendants' summary judgment motion.

### B. Defendants' Affidavits

Plaintiffs have moved to strike the Gilbride, Russell, Fazio, Rossi and Guiney affidavits and paragraphs 27, 28, 29, 30, 21 and 35 of Defendants' Rule 56.1 Statement, which cite those affidavits. Plaintiffs argue that these affidavits are "sham affidavits" because the affiants are defendants in this case and are therefore "interested parties." (Pltf. Mot. to Strike ¶ 8) Nothing in the Federal Rules of Civil Procedure,

17

however, precludes a party from submitting his or her own affidavit in support of a summary judgment motion. Indeed, Fed. R. Civ. P. 56(e) expressly provides that a party may support a summary judgment motion with such an affidavit, as long as it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).

Moreover, "nothing in the rules or the case law requires a court to strike any portion of . . . [a Rule 56(e)] affidavit that is not properly supported." Miller v. Batesville Casket Co., No. 02-Civ.-5612(DLI)(ARL), 2007 WL 2120371, at *6 (E.D.N.Y. July 23, 2007). A court may decline to conduct a line-by-line analysis and instead simply disregard the allegations that are not properly supported. Id. at *5; see also Flaherty v. Filardi, No. 03-Civ.-2167(LTD)(HBP), 2007 WL 163112, at *4 (S.D.N.Y. Jan. 24, 2007) (same); Doe v. Nat'l Bd. of Podiatric Medical Examiners, No. 03-Civ.-4034(RWS), 2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004) (same).

Here, there is no basis for disregarding Defendants' affidavits in their entirety. The Court has disregarded, however, those portions of Defendants' affidavits and Rule 56.1 Statement that are not based on personal knowledge, rely on hearsay, or are otherwise inadmissible. See Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999) (court may disregard "portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements"). The Court has likewise disregarded the affidavits to the extent that they are inconsistent with that witness's deposition testimony.

### C. Defendants' Exhibits

Plaintiffs also seek to strike two of Defendants' exhibits: (1) Exhibit J to the Rossi Affidavit, which is entitled "Hastings High School Code of Conduct" and

18

which is dated September 2006, and (2) Exhibit II to the Gilbride affidavit, which is identified as "a true and correct copy of S.S.'s diary." (Gilbride Aff. ¶ 10) Because the Court did not rely on either exhibit in ruling on Defendants' summary judgment motion, Plaintiffs' motion with respect to these exhibits is denied as moot.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Docket No. 19) is GRANTED and Plaintiffs' motion to strike (Docket No. 30) is DENIED. The Clerk of the Court is directed to close this case.

Dated: New York, New York  
      June 1, 2009

SO ORDERED.

_____  
Paul G. Gardephe  
United States District Judge